# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMIE K. LUSHER, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-15-131-RAW-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Jamie K. Lusher requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423

(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on November 10, 1953, and was sixty years old at the administrative hearing (Tr. 43). She completed high school with at least one class in which she was assigned to special education, and has worked as a janitor and stocker (Tr. 30, 187). The claimant alleges she has been unable to work since June 10, 2011, due to asthma and back issues (Tr. 186).

### Procedural History

On January 27, 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security insurance payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Bernard Porter held an administrative hearing and determined the claimant was not disabled in a written decision dated January 24, 2014 (Tr. 19-32). The Appeals Council denied review, so the ALJ's written decision represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform a limited range of medium work as defined in 20 C.F.R. §§ 404.1567)(c), 416.967(c), *i. e.*, she could lift/carry fifty pounds occasionally and twenty-five pounds frequently,

stand/walk/sit six hours in an eight-hour workday, and push/pull as much as she can lift/carry. Additionally, the ALJ determined that the claimant could occasionally use foot controls, climb ramps and stairs; frequently perform overhead reaching; never climb ladders or scaffolds, perform any crawling, work around unprotected heights or moving mechanical parts, nor could she have concentrated exposure to dusts, fumes, or gases, and she further needed to avoid environments where there are temperature extremes. Finally, he limited her to simple tasks and simple work-related decisions; found she could have frequent interactions with supervisors, co-workers, and the public; and that her time off task would be accommodated by normal breaks (Tr. 25). The ALJ thus concluded that the claimant could return to her past relevant work as a janitor and stocker, both medium and unskilled positions, and alternatively found that there was other work she could perform, *e. g.*, hand packer, dining room attendant, and laundry worker I, which were also medium and unskilled positions (Tr. 30-31).

**Review**

The claimant contends that the ALJ erred by: (i) failing to develop the record as to her intellectual or cognitive functions; (ii) failing to properly assess her RFC related to her back pain, intellectual functioning, and credibility; and (iii) improperly determining she could return to her past relevant work and could perform alternative work at step five. The undersigned Magistrate Judge finds these contentions unpersuasive for the following reasons.

The ALJ determined that the claimant had the severe impairments of hypertension, obesity, asthma, and major depression, as well as the nonsevere impairments of

unspecified back pain; knee pain; pain in the arms, shoulders, and hands; hearing loss, chronic diarrhea; hyperlipidemia; hypothyroidism; and an ingrown toe nail (Tr. 21). Additionally, he determined that the claimant's allegation of probable intellectual dysfunction was medically non-determinable (Tr. 23). The treatment records contained in this transcript reveal that the claimant was treated at a clinic for hyperlipidemia, unspecified backache, hypothyroidism, hypertension that was uncontrolled when she was off her medications, and an ingrown toenail (Tr. 342-439).

On February 21, 2012, consultative examiner Ronald Schatzman, M.D., conducted a physical examination of the claimant (Tr. 280). He took a history, then noted that her speech was 100% intelligible, she had no hearing deficit to normal conversational voice, and her thought processes appeared normal (Tr. 281-282). She was morbidly obese, had full grip strength and full range of motion of the spine with no tenderness, and had a safe gait with normal heel/toe walking (Tr. 282-283). He assessed her with hypertension, morbid obesity, back ache by history, hearing loss by history, asthma by history, shortness of breath by history, chronic diarrhea cause by stress by history, and chronic pain by history (Tr. 284).

On June 19, 2012, Diane Brandmiller, Ph.D., conducted a mental status examination of the claimant. Based on the results of the mental status exam, Dr. Brandmiller gave the claimant an Axis I diagnosis of major depression, recurrent, moderate (Tr. 297). She stated that the claimant's long-term memory was intact, she could describe personal historical information without difficulty, her short-term memory was intact, concentration was mildly impaired, performance on reverse counting

improved with a simple task, abstract thinking was mildly impaired, and expressive and receptive language skills appeared intact (Tr. 297). She noted the claimant's difficulty with subtraction and that her sister helped her with her finances, and indicated she would need assistance in managing funds (Tr. 297).

On June 27, 2012, Tom Shadid, Ph.D., reviewed the claimant's record and concluded she was mildly impaired in restriction of activities of daily living and moderately impaired with regard to difficulties in maintaining social functioning and maintaining concentration, persistence, or pace (Tr. 330). He then completed a mental RFC assessment in which he first indicated that the claimant was moderately limited in the usual three categories of ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public, then concluded that she could perform simple and some complex tasks, relate to others on a superficial work basis, and adapt to a work situation (Tr. 301-303).

On October 22, 2013, Mary K. Pearson, Executive Director for the Literacy Council of Western Arkansas, Inc., wrote a letter in which she stated that the claimant had been administered a literacy skills test and the results indicted she was functioning at a sixth grade six month level of literacy, which was a category described as marginally literate (Tr. 360).

In his written opinion, the ALJ summarized the claimant's hearing testimony as well as the medical evidence in the record. At step four, the ALJ discussed the evidence and how the RFC accounted for her severe impairments, including hypertension, blood pressure, obesity, asthma, and depression (Tr. 26-28). He then noted Ms. Pearson's

literacy report, but found that the RFC which limited her to unskilled work accounted for her reading deficiencies (Tr. 28). He gave Dr. Shadid's assessment (and its affirmation by another reviewing physician) some weight, finding it consistent with the claimant's lack of treatment, but noting they did not examine the claimant or hear her testimony (Tr. 29).

First, the claimant contends that the ALJ failed to develop the record with regard to her mental impairment and allegations of intellectual dysfunction, asserting that the ALJ "turned a blind eye" to the evidence on this point. It is true that a social security disability hearing is nonadversarial and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Department of Health & Human Services*, 13 F.3d 359, 360-61 (10th Cir. 1993), *citing Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The ALJ nevertheless has "broad latitude" in deciding whether or not to order a consultative examination. *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997), *citing Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990). "When the claimant has satisfied his or her burden" of presenting evidence suggestive of a severe impairment, "then, and only then, [it] becomes the responsibility of the ALJ to order a consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment." *Id*. at 1167. Here, the ALJ specifically stated in his opinion that he believed the medical evidence of record had been adequately developed and noted that he had considered the claimant's request for further evaluation, but found that the need for one was not reflected in the record, that the record did not contain any

diagnoses related to her intellectual functioning, and that the mental evaluations were not particularly adverse, including her own reports to Dr. Brandmiller and at the administrative hearing that she reads on a twelfth grade level and has a twelfth grade education (Tr. 45, 295). Furthermore, the ALJ did not reject the results of the administered literacy exam, but rather noted that Ms. Pearson is not an acceptable medical source and pointed out the claimant's own reports as to her education level (Tr. 28). Rather than reject this finding as to the claimant's literacy, the ALJ then noted that his limitation to unskilled work would account for any literacy deficiencies (Tr. 28). Despite her assertion that the ALJ ignored this evidence, the undersigned Magistrate Judge finds that the ALJ *did not* ignore this evidence but rather properly considered it. Accordingly, the undersigned Magistrate Judge finds no error on this point.

The claimant next contends that the ALJ erred in his RFC analysis because he: (i) failed to account for her cognitive/learning impairments, (ii) rejected her complaints of back pain and erred by not finding it a severe impairment, (iii) erred in his credibility assessment, and (iv) improperly rejected lay witness statements by her friend and sister.

As to the claimant's cognitive and/or learning impairments, the undersigned Magistrate Judge finds that the ALJ did not, however, commit any error in his analysis. As discussed above, he noted and fully discussed the findings of the claimant's various treating, consultative, and reviewing physicians, including those records related to any mental impairments the claimant had. The ALJ's conclusions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins v. Barnhart*,

-8-

350 F.3d 1297, 1300 (10th Cir. 2003), *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). The ALJ's treatment of the medical evidence in this case meets these standards. The undersigned Magistrate Judge finds that the ALJ specifically noted the various findings of the claimant's treating, consultative, and reviewing physicians, *adopted* any limitations suggested in the medical record, *and still concluded* that she could perform medium work.

With regard to the claimant's allegation of error in failing to find her back pain a severe impairment, this Court and the Tenth Circuit have repeatedly held, "[o]nce the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal." *Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008). Thus, even assuming *arguendo* that the ALJ erred in finding her back pain to be a severe impairment, such error was harmless because he found she had numerous other severe impairments. The ALJ is, however, required to consider *all* the claimant's impairments throughout the sequential evaluation. *Id.* ("[T]he ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'"). In this case, the ALJ specifically noted at step four the claimant's complaints of pain but found that the relatively conservative pain medication management (Meloxicam), along with the fact that she has not undergone physical therapy, worn a brace, received injections, or had surgery or even been recommended for surgery, suggested that her pain did not rise to the level of a totally disabled individual (Tr. 29).

The claimant also contends that the ALJ erred in analyzing her credibility. A credibility determination is entitled to deference unless there is some indication that the ALJ misread the medical evidence as a whole. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted]. An ALJ's credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

The ALJ noted in his written opinion that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not completely credible" (Tr. 28). Use of boilerplate language is generally disfavored, *see, e. g., See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1170 (10th Cir. 2012) ("Such conclusory analysis, which neither reveals what "other reasons" or "other factors" prompted the ALJ's conclusions, nor is tethered to specific evidence, constitutes the type of disfavored boilerplate this court rejected in *Hardman* [*v. Barnhart*, 362 F.3d 676, 678-679 (10th Cir. 2004)."]), but this was not the sum total of the ALJ's analysis of the claimants' credibility. Elsewhere in the opinion, for example, the ALJ set out the applicable credibility factors and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not credible, including: (i) she testified that she stopped working because she was fired for allegedly stealing money, rather than a reason

related to her impairments; (ii) her daily activities (preparing meals, using a weed eater, vacuuming, dusting, raking, watering plants) were some of the same mental and physical abilities and social interactions required to obtain and maintain work; and (iii) her sparse treatment records suggested her impairments were not as severe as alleged (Tr. 28-29). The ALJ thus linked his credibility determination to evidence as required by *Kepler*, and provided specific reasons for his determination in accordance with *Hardman*. There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and his determination of the claimant's credibility is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

Furthermore, the ALJ's assessment of the lay witness opinions does not constitute reversible error. Social Security Ruling 06-03p (SSR 06-03p) provides the relevant guidelines for the ALJ to follow in evaluating "other source" opinions from non-medical sources like the claimant's husband; her friend who was the mayor of Warner, Oklahoma, and her Oklahoma state representative who had known her for twenty years. *See* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 (Aug. 9, 2006). SSR 06-03p states, in part, that other source opinion evidence should be evaluated by considering the following factors: (i) nature and extent of the relationship, (ii) whether the evidence is consistent with other evidence, and (iii) any other factors that tend to support or refute the evidence. Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6. Here, the ALJ noted that the claimant's friend had prepared a Third Party Function statement indicating, *inter alia*, that the claimant had gained weight and did not want to exercise since losing her job, and was not good at managing her money (Tr. 220-227). Additionally, her sister wrote a letter stating that she

had to fly in to help the claimant prepare her disability application (Tr. 219). The ALJ noted both of these statements and found that they did not support a finding that the claimant was disabled, noting they are not medically trained nor are they disinterested parties (Tr. 29-30). "The fact that the ALJ is required to consider such third-party statements does not mandate that the ALJ adopt them in full." *Shelton v. Colvin*, 2015 WL 5569024, at *17 (W.D. Okla. Aug. 24, 2015) (slip op.). Thus, when all the evidence is taken into account, the conclusion that the claimant could perform medium work is supported by substantial evidence. *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

Finally, the claimant contends that the ALJ failed to properly account for the demands of her past relevant work at phase two of the RFC assessment, and thus his conclusion that she could perform her past relevant work was not properly supported by evidence. With regard to phase two, the undersigned finds the ALJ's questioning of the claimant at the administrative hearing and the VE's testimony about the exertional and skill levels of the jobs was sufficient to establish the demands of the claimant's past work (Tr. 46-48, 64-66, 77-79). *See, e. g.*, *Westbrook v. Massanari*, 26 Fed. Appx. 897, 903 (10th Cir. 2002) (finding that remand under *Winfrey* is appropriate only when the record is "devoid of even any mention of the demands of past relevant work[.]") [citation

omitted] [unpublished opinion]. Even assuming *arguendo* the demands of the claimant's past work were insufficiently developed, the ALJ determined the claimant could return to her past relevant work as a janitor or stocker, *as these jobs were generally performed* (Tr. 30). This finding makes any further inquiry into the actual demands of the jobs unnecessary. *See*, *e.g.*, *Andrade v. Secretary of Health & Human Services*, 985 F.2d 1045, 1050 (10th Cir. 1993) (noting that the ALJ shall consider "the claimant's ability to perform either . . . '[t]he actual functional demands and job duties of a particular past relevant job; or . . . [t]he functional demands and job duties . . . as generally required by employers throughout the national economy.'"), *quoting* Soc. Sec. Rul. 82-61, 1982 WL 31387, at *1 (1982). *See also Wise v. Barnhart*, 42 Fed. Appx. 331, 333 (10th Cir. 2002) ("[T]he issue is not whether claimant can return to her actual past job, but to the type of work she performed in the past.") [unpublished opinion], *citing Andrade*, 985 F.2d at 1051. Further, the ALJ made his own phase-three findings that the claimant's RFC did not preclude her performance of past work (Tr. 30). Although the ALJ clearly relied on the VE's testimony for his phase-three findings, *see Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003) ("An 'ALJ may rely on information supplied by the VE at step four.'"), *quoting Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir. 1996), he did not "delegate the analysis to the [VE]." *Id*. ("The ALJ did not delegate the analysis to the vocational expert; instead, he quoted the VE's testimony approvingly, in support of his own findings at phases two and three of the analysis."). Thus, the ALJ's analysis of the claimant's past relevant work satisfied the requirements set forth in *Winfrey*. Moreover, the claimant's final, related, contention is that she cannot perform the jobs identified at

step five by the ALJ because she cannot perform the RFC assigned. But the ALJ concluded otherwise, and as discussed above, substantial evidence supports the ALJ's determination in this regard. The claimant's final contentions are therefore without merit.

The essence of the claimant's appeal here is that the Court should re-weigh the evidence and determine her RFC differently from the Commissioner, which the Court simply cannot do. *See Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 31st day of August, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**